PROTECTIVE LIFE INSURANCE COMPANY *v.* TIBBS.

4-4210

Opinion delivered March 2, 1936.

*Brewer & Cracraft,* for appellant.

*W. G. Dinning,* for appellee.

JOHNSON, C. J. This action was instituted by appellee, Earnest Tibbs, executor of the estate of Alexander Tibbs, deceased, against appellant, The Protective Life Insurance Company of Birmingham, Alabama, and The Lincoln Reserve Life Insurance Company also an Alabama corporation, in the Phillips Circuit Court to recover the proceeds of a life insurance policy. The complaint in effect alleged that on August 28, 1924, the Lincoln Reserve Life Insurance Company issued to Alexander Tibbs its policy of insurance whereby the life of the insured was indemnified against death in the sum of

$3,000; that all premiums were paid up to November 28, 1932; that the policy on that date had a cash reserve of $868.40, but that the insured owed the company upon a loan, the sum of $665; that after deducting the loan from the reserve of the policy there was a balance due to the insured as cash reserve the sum of $203.40 which was sufficient to purchase extended insurance and to keep the policy in full force and effect until after the death of the insured. The death of the insured was alleged to have occurred during the life of the policy, and it was further alleged that appellant, Protective Life Insurance Company, had expressly assumed the contractual liabilities of the Lincoln Reserve Life Insurance Company, thereby becoming liable to appellee for the full face value of the policy. It was further alleged that due proof of death had been executed and liability denied prior to the institution of this suit. By way of answer, liability was denied in behalf of the Protective Life Insurance Company and by consent of the parties the issues joined were submitted to the trial court without the intervention of a jury. The facts of the case are not in material dispute and may be summarized as follows: In addition to the facts heretofore stated, it appears from the testimony that on January 11, 1933, the Lincoln Reserve Life Insurance Company was adjudged a bankrupt by the United States District Court for the Northern District of Alabama, and all its assets were placed in receiver's hands for distribution to creditors. A few days subsequent thereto, the court in which the bankruptcy proceedings were pending, and the Superintendent of Insurance for the State of Alabama approved an assumption agreement between the Lincoln Reserve Life Insurance Company and appellant, whereby appellant assumed the outstanding liabilities of the Lincoln Reserve Life Insurance Company, as follows:

"Protective agrees to and does hereby reinsure all policies of insurance of the Lincoln in force on January 11, 1933, including all annuity and/or supplementary contracts, and all policies reinsured by Lincoln, and extended term and paid-up insurance policies in force by their term of said date, and agrees (except as herein provided)

to carry out all the provisions and agreements contained in said policies subject to any and all defenses against claims under or actions upon said policies which Lincoln might lawfully have asserted had this contract not been made, and subject to the lien hereinafter specified.''

\* \* \*

''As part of the consideration moving the Protective to execute this agreement and to assume the liabilities herein assumed, there is hereby established and placed against each policy and contract reinsured and assumed by Protective here under a lien equal to the full legal reserve thereof, including dividend and coupon additions and accumulations, and an adequate reserve for disability and double indemnity benefits, if any, and less the sum of any indebtedness and accrued interest existing against the policy on the effective date of this contract, as such reserve has been or under the laws of the State of Alabama should be established and carried by the Lincoln as of the 11th day of January, 1933.''

''When the amount of any policy indebtedness and/or lien (hereinafter mentioned) with interest thereon on any Lincoln policy now or hereafter paid up equals or exceeds the reserve thereon, then any such policy shall cease and determine, except that all such policies shall continue in force and effect for sixty days from the effective date of this contract.''

The rider sent out by the Protective Life Insurance Company to the policyholders of the Lincoln Reserve Life Insurance Company was to the following effect:

''This is to certify that the policy above mentioned issued or assumed by Lincoln Reserve Life Insurance Company, Birmingham, Alabama, has been assumed by Protective Life Insurance Company, Birmingham, Alabama, subject to the conditions of the policy and to the terms of the reinsurance agreement, a copy of which is attached hereto and made a part hereof, and all future amendments thereto, conditioned upon the insured paying the premiums to Protective Life Insurance Company in the amounts and at the times and on the terms required by said policy.''

It is admitted that the insured paid no premiums to the Protective Life Insurance Company subsequent to the approval of the assumption agreement.

The trial court found that appellant was not liable to appellee under the assumption agreement for the face value of the policy, but determined that it was liable to appellee for the balance of the cash reserve of the policy, and rendered judgment accordingly, from which appellant appeals and appellee cross-appeals.

Appellant's first contention is that the adjudication of the Alabama Bankruptcy Court that the Lincoln Reserve Life Insurance Company was insolvent canceled the policy of insurance held by Alexander Tibbs, a resident of this State, although he had no notice or knowledge of the court's proceeding in Alabama. Appellant is in no position to invoke the doctrine asserted, were it conceded that such is the law. By the express terms of the assumption agreement, appellant recognized the validity of all outstanding contracts theretofore made by the Lincoln Reserve Life Insurance Company and expressly agreed to assume due and prompt payment thereof upon the conditions provided in the assumption contract; therefore, it appears unnecessary to discuss or decide this very interesting question, so thoroughly briefed by counsel.

The policy of insurance which is the subject-matter of this lawsuit is an Arkansas contract, and was issued by the Lincoln Reserve Life Insurance Company when it was solvent and doing a life insurance business in this State. Although, the record is silent on the subject, we conclusively presume in this case that the Lincoln Company had complied with the laws of this State qualifying it to do business here. Therefore, we presume that the Lincoln Company had on deposit in the State of Alabama, securities of at least $100,000 cash value as required by § 6059 of Crawford & Moses' Digest or had complied with § 5980 of Crawford & Moses' Digest. These statutes were promulgated for the benefit of policyholders in this State, and all persons or corporations dealing with such pledged assets necessarily do so with full knowledge of them. Under the facts and circumstances just related

appellant is conclusively presumed to have received under its assumption agreement all trust assets of the Lincoln Company whether on deposit in this State or in the State of Alabama, and we consider the questions now before us in the light of these facts and circumstances.

We now proceed to an examination and construction of the assumption agreement. It may be stated at the outset that it is our duty to construe the assumption agreement between appellant and the Lincoln Reserve Life Insurance Company from the language employed therein and avoid absurdities if possible. Evidently it was not the purpose or the intention of the contracting parties to take the cash reserve allocated on all outstanding contracts of insurance and convert it to the use of some other class of beneficiaries or to permit the Protective Life Insurance Company to convert such reserve to its own use and benefit without corresponding obligations. To avoid this absurdity, we believe and so hold, that it was the intention and purpose of the contracting parties that the Protective Life Insurance Company would assume and pay all outstanding liabilities of the Lincoln Reserve Life Insurance Company, conditioned, however, that the cash reserve of all outstanding Lincoln Reserve Policies should be subordinated for the purpose of extended insurance, paid-up insurance or other benefits of similar intent, purpose and effect, and that this subordination might be removed in the future by actual payment of future premiums by the insured to the Protective Life Insurance Company. On the other hand, if the insured or the policyholder elected, as they had the absolute right to do, to refuse to accept the plan of reinsurance offered by the contracting parties, then and in that event the proportionate part of the total assets received by the Protective Life Insurance Company allocated to these policies should be held in trust for the benefit of those who had created these assets. See *Casteel v. Ky. Home Life Ins. Co.*, 258 Ky. 304, 79 S. W. (2d) 941.

From this construction of the contract of assumption, it follows that appellee is not entitled to recover the face value of the policy of insurance from the Protective Life Insurance Company because neither he nor the in-

sured accepted the reinsurance plan by actually paying future premiums to appellant, but, on the contrary, repudiated the plan by refusing to pay such premiums. It follows from this that the cross-appeal must be affirmed.

On direct appeal it may be said that it follows from our construction of the contract heretofore stated that appellee is entitled to recover the *pro rata* proportion of the assets allocated to his contract of insurance which passed into the hands of the Protective Life Insurance Company as trustees. See *Lovell* v. *Insurance,* 111 U. S. 264, 4 S. Ct. 390; *Casteel* v. *Ky. Home Life Ins. Co., supra.*

Our holding here is in line with the trend of our previous opinions under analogous facts and circumstances. In *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389, 130 S. W. 574, we held a surety liable on a qualifying bond irrespective of an adjudication of insolvency of the principal in a foreign jurisdiction. Had the Lincoln Company filed a surety bond as required by § 5980 of Crawford & Moses' Digest, cited *supra,* instead of a qualifying certificate under § 6059, as it did, there could be no doubt but that, under our opinion in the Flemister case, *supra,* we would hold that this cause of action might be maintained against the surety. Appellant is in no better position than a paid surety as we believe. But appellant seriously contends that the conclusions just stated are not applicable to the facts here presented for the reason that appellant's liability was adjudicated and determined in the Alabama Federal District Court. We did not so construe the contract of assumption as we have heretofore pointed out. Moreover, the insurer was not a party to the Alabama suit, and had no notice of its pendency. Under such circumstances it is fundamental that appellee is not bound by the adjudication. See *Federico M. Man. Co.* v. *Great W. Fire Ins. Co.,* 173 La. 905, 139 So. 1, 79 A. L. R. 1256, and cases therein cited, also appended case note.

The question then arises in reference to measure of appellant's liability. *Prima facie* the value of appellee's

contract is the balance of the cash reserve of the policy, and this is conceded to be $203.40. If all assets received by appellant in trust as hereinbefore defined are of less value than the cash reserve, the burden was upon it to show the actual cash value of the reserve at the time of the execution of the assumption contract. This it has failed to do.

The trial court based its judgment against appellant upon the cash reserve of the policy, and, since no evidence was offered by appellant in contradiction thereof, the court was correct in deciding as it did. It follows that the judgment attacked on direct appeal is correct, and must be affirmed.