YOUNG ET AL. v. BUNNELL CEMETERY ASSOCIATION.

[No. 27,754. Filed March 1, 1943.]

*Robinson & Robinson,* of Frankfort, and *Owen S. Boling,* of Indianapolis, for appellants.

*Gruber & Morrison,* of Frankfort, for appellee.

FANSLER, J.—This is an action by the appellee to condemn real estate owned by the appellants for cem-

etery purposes. The complaint follows the statute, § 3-1702, Burns' 1933 (Supp.), § 14062, Baldwin's Supp. 1935. To the complaint the appellants filed objections, certain of which were in the nature of a demurrer, and certain others asserted that material allegations of the complaint are conclusions and seek an order requiring that the facts be alleged. These latter assert that the statements that the land is intended for use as a "public cemetery" and for "public cemetery purposes" are conclusions. We cannot concur in this view. Any further allegations on the subject would necessarily be a recital of evidence by which it was sought to prove that the cemetrey is a public one. The allegation that the plaintiff intends to use the property as a public cemetery is sufficient under the statute. There was the further objection that the plaintiff has not set out in its complaint the statute under which it seeks to exercise the right of eminent domain. But we know of no rule of law that requires such an allegation, and the statute which prescribes the allegations which the complaint shall contain does not require it. There is also an objection that the complaint does not allege facts to show that the plaintiff has made a *bona fide* effort to purchase the property before beginning the procedure. But there is a clear and plain allegation that the plaintiff has endeavored to purchase the property, including improvements, but has been unable to reach an agreement with the defendants. This objection seems to be a premature objection to the sufficiency of the correspondence between the parties, which was afterward introduced in evidence, to sufficiently establish a *bona fide* effort to purchase.

There was a trial by the court and special findings of facts and conclusions of law.

It appears from the evidence that in 1888 more than

five persons, there being more than thirty, adopted articles of association of "Bunnell's Cemetery Association" for the purpose of owning and purchasing such grounds as might be necessary for cemetery purposes, to plat the same, sell lots to members of the association and others desiring to become members, and to properly care for the cemetery. Five directors were provided for, and there was provision for the election of their successors. These articles of association were signed, and recorded in the miscellaneous record in the office of the Recorder of Clinton County on March 1, 1888. The first plat and dedication of land used by the association was filed in the recorder's office on January 3, 1891. This instrument gave notice to the public of the laying out and platting of the real estate for a cemetery to be used for burial purposes, and that the association had neglected to properly dedicate the same when it was organized, and it was thereby dedicated, with rights reserved to sell lots as platted, and the alleys and driveways were dedicated to the use of the lot owners and for that part of the public that might attend funerals in the cemetery. In 1900 additional land was acquired and platted in like manner. In 1921 additional land was acquired and platted for cemetery purposes in like manner. During the years lots have been sold to 2,024 different persons. By the rules of the association, any member of the public could buy a lot by meeting the price requirements and making a down payment, and the price of lots was uniform to any member of the public. All funds coming into the hands of the association by donation or from sale of lots have been set aside for the care of the cemetery.

It appears that the board of directors determined that it was necessary to purchase the additional real

estate herein sought to be condemned for the purpose of enlarging the cemetery for burial purposes. Pursuant to this decision, the association authorized its attorneys to endeavor to purchase the property, and pursuant to such authority the attorneys wrote a letter to the defendants stating that they had been authorized to offer $600 for the real estate in question. The entire letter is not set out in appellants' brief. The appellants contend that there was no offer to purchase the improvements. It is conceded, however, that the land was described by metes and bounds in the letter. Ordinarily an offer to purchase real estate upon which permanent improvements are located is considered as including the improvements. Defendants' answer to the letter is set out in the brief in full. This discloses that the defendants did not want to sell at any price, but offered to take four times the price offered. It discloses a surmise on the part of the defendants that the association desired to acquire the land in order to tear down an old barn located thereon, and the defendants offered to tear down the barn. This indicates an understanding that the offer included the improvements. The tract contains approximately three acres and seems to be used as farm land or for feeding hogs. There is nothing to indicate, as the appellants suggest, that the offer to purchase for $600 was not made in good faith.

The statute concerning the incorporation of cemeteries, in effect at the time this association was organized and its articles recorded in the miscellaneous record in the recorder's office, provided for a petition and application for incorporation to the board of commissioners of the county. Section 21-101, Burns' 1933, § 4617, Baldwin's 1934. This statute was not complied

with. In 1913 a statute was enacted legalizing associations in which any number of persons, at all times more than five, for thirty years or more, had acted together as a cemetery association for cemetery purposes, and sold lots and granted the right to bury the dead. Section 21-106, Burns' 1933, § 4663, Baldwin's 1934. The appellee had not been operating for thirty years at the time this act was passed, and the appellants contend that it is retroactive only in its effect. It does, however, disclose a legislative desire to legalize imperfectly incorporated cemetery associations.

In 1897 (Acts 1897, ch. 190, § 1, p. 309) a statute authorizing the condemnation of land for cemetery purposes, and providing that the trustees of any incorporated town, or the trustees of any corporation, owning or controlling a public cemetery, might so condemn, was amended by adding this provision: "It is provided that where any cemetery society has heretofore regularly caused its articles of association to be recorded in either the miscellaneous, mortgage or deed records of its county such organization is hereby legalized." Section 21-301, Burns' 1933, § 4682, Baldwin's 1934. This statute seems sufficient to legalize the incorporation of the appellee association. Section 21-301, Burns' 1933, § 4682, Baldwin's 1934, *supra*, was amended in 1941 (Acts 1941, ch. 94, § 1, p. 235) so as to provide that: "Whenever, in the opinion of . . . the trustees or directors of any corporation or association owning or controlling a public cemetery, which has been in existence for thirty years or more, or other owner of any public cemetery, which has been in existence for thirty years or more . . ." it becomes necessary to purchase real estate for cemetery purposes, "such directors or such other person shall have the right and power of eminent domain, and to

take, acquire, condemn, and appropriate such real estate for cemetery purposes. . . . It is provided that where any cemetery society has heretofore regularly caused its articles of association to be recorded in either the miscellaneous, mortgage, or deed records of its county, such organization is hereby legalized." This later statute indicates a legislative intention not only to legalize imperfectly incorporated associations, but to vest the right of eminent domain in any "owner of any public cemetery, which has been in existence for thirty years or more," whether incorporated or not. The appellee association had been in the continuous operation of a public cemetery for more than fifty years before this latter act was passed, and we find it impossible to avoid the conclusion that the Legislature considered all such to be agencies serving the public interest, and that it was expressly intended to vest them with the power of eminent domain. That the cemetery operated by the appellee was a public one cannot reasonably be doubted. Lots for burial purposes were on sale to the public at a uniform price, and burials have averaged more than one hundred per year.

All of the essential facts above referred to were expressly found by the court. These facts are sufficient to entitle the plaintiff to recover. The first conclusion of law is that the law is with the plaintiff. This conclusion is a sufficient basis for the judgment appointing appraisers, and we need not consider the correctness of the other conclusions. *State ex rel. Johnson et al.* v. *Boyd et al.* (1940), 217 Ind. 348, 28 N. E. (2d) 256; *Morthland* v. *Lincoln National Life Insurance Co.* (1942), 220 Ind. 692, 42 N. E. (2d) 41.

Judgment affirmed.

NOTE.—Reported in 46 N. E. (2d) 825.